TROY LAW, PLLC
John Troy (JT 0481)
Aaron Schweitzer (AS6369)
41-25 Kissena Boulevard Suite 103
Flushing, NY 11355
Tel:    (718) 762-1324
*Attorney for the Plaintiffs, the proposed FLSA*
*Collective and potential Rule 23 Class*
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**                    **Case No: 21-cv-00231**
-------------------------------------------------------------------X
NICOLAS GUADALUPE RAMIREZ,                             **29 U.S.C. § 216(b)**
ESTELA ROCIO RAMIREZ, and                             **COLLECTIVE**
ROSALINDA ROSALES                                     **ACTION & F.R.C.P. 23  CLASS**
*on behalf of themselves and others similarly situated*   **ACTION**

                    *Plaintiffs,*
                              v.                      **COMPLAINT**
ARCHDIOCESE OF NEW YORK;
ST. JOSEPH OF THE HOLY FAMILY;                        **DEMAND FOR TRIAL BY**
JOSEPH SAYEGH,                                        **JURY**
LUANA DARSON, and
JOSEPH KINDA,
                    *Defendants.*
-------------------------------------------------------------------X

        Plaintiffs NICOLAS GUADALUPE RAMIREZ, ESTELA ROCIO RAMIREZ, and

ROSALINDA ROSALES (hereafter referred to as "Plaintiffs"), on behalf of themselves and

others similarly situated, by and through their attorney, Troy Law, PLLC, hereby bring this

complaint against Defendants ARCHDIOCESE OF NEW YORK; ST. JOSEPH OF THE HOLY

FAMILY; JOSEPH SAYEGH, LUANA DARSON, and JOSEPH KINDA, (hereafter referred to

as "Defendants") and allege as follows:

## INTRODUCTION

        1.      This action is brought by Plaintiffs, on their behalves, as well as other employees

similarly situated, against Defendants for (1) failure to pay severance failing to pay Plaintiffs a

week's salary per year of service at the time of the termination of their employment, (2) failing

to provide wage notice and paystubs per Section 195 of the NYLL and (3) race and ethnic discrimination for terminating all Hispanic employees of Church of St. Joseph of the Holy Family, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), New York State Human Rights Law, NY Exec. § 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, NYC Admin. § 8-101 *et seq.* (NYCHRL).

2.      In addition, Plaintiff ESTELA ROCIO RAMIREZ also brings a claim of unpaid wages under Section 206 of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and Section 652 of the New York Labor Law, N.Y. Lab. L. ("NYLL").

3.      Each of the Plaintiffs bring an express breach-of-contract failure to pay severance as promised by the Defendants.

4.      Plaintiffs further allege that they are each entitled to recover from Defendants (1) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (2) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (3) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act; (4) 9% simple prejudgment interest provided by NYLL; (5) post-judgment interest; and (6) attorney's fees and costs.

5.      Plaintiff ESTELA ROCIO RAMIREZ alleges pursuant to the Fair Labor

Standards Act ("FLSA") that she is entitled to recover from the Defendants: (1) unpaid wages, (2) liquidated damages, (3) prejudgment and post-judgment interest; and (4) attorneys' fees and costs.

6.      Plaintiff ESTELA ROCIO RAMIREZ further alleges pursuant to New York Labor Law § 650 *et seq.* and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that she is entitled to recover from the Defendants: (1) unpaid compensation.

7.      Plaintiffs also bring this action under the Civil Rights Act of 1866, 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended ("Title VII") the New York Human Rights Law, ("NYHRL"), 15 N.Y. Exec. Law § 296 *et seq.*, and New York City Human Rights Law (NYCHRL) NYC Admin. § 8-101 *et seq.*, for damages arising from discrimination based on race in their employment, and from discriminatory termination, by above-captioned Defendants.

8.      On December 6, 2020, Plaintiffs each filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination.

9.      On January 5, 2021, Plaintiffs each received a Notice of Right to Sue from the EEOC. (See Exhibit 04 to 06).

## JURISDICTION AND VENUE

10.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

11.     The jurisdiction of this Court is invoked pursuant to 18 U.S.C. §1965, 28 USC §§1331, 1343, and 2202 to secure protection of and to redress deprivation of rights secured by the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981, and this Court's power to assert

ancillary and pendant jurisdiction over state law claims based on NYHRL, the common law of New York State and city law based on the NYCHRL.

12.     This Court has personal jurisdiction over individual Defendants JOSEPH SAYEGH, LUANA DARSON, and JOSEPH KINDA as Defendants are citizens and residents of the State of New York.

13.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

**PLAINTIFFS**

14.     Plaintiff NICOLAS GUADALUPE RAMIREZ was employed by Defendant Church of St. Joseph of the Holy Family at 405 West 125th Street, New York, NY 10027 as a plant manager/head custodian.

15.     NICOLAS GUADALUPE RAMIREZ is a beloved member of the St. Joseph of the Holy Family community, and many parishioners have been lifelong friends.

16.     He has held his job with honor and great dignity, as witnessed by the Fathers as well as the church staff.

17.     Plaintiff ESTELA ROCIO RAMIREZ was employed by Defendant Church of St. Joseph of the Holy Family at 405 West 125th Street, New York, NY 10027 as a nonexempt custodian assistant.

18.     ESTELA ROCIO RAMIREZ worked alongside NICOLAS GUADALUPE RAMIREZ, her husband.

19.     Plaintiff ROSALINDA ROSALES was employed by Defendant Church of St. Joseph of the Holy Family at 405 West 125th Street, New York, NY 10027 as a nonexempt

custodian assistant.

## DEFENDANTS

20.     Defendant Church of St. Joseph of the Holy Family (hereafter "St. Joseph) is a parish church of the Archdiocese of New York.

21.     St. Joseph is located at 405 West 125th Street, New York, NY 10027.

22.     The St. Joseph holds an English, French, and Spanish mass.

23.     The Archdiocese of New York is an ecclesiastical district encompassing 296 parishes in the boroughs of Manhattan, the Bronx, and Staten Island in New York City and the counties of Dutchess, Orange, Putnam, Rockland, Sullivan, Ulster, and Westchester.

24.     Upon information and belief, the Archdiocese of New York employs more than 1000 employees at any one time.

25.     Upon information and belief, St. Joseph handled goods moved or produced in commerce in excess of Five Hundred Thousand Dollars ($500,000) per year.

26.     Upon information and belief, St. Joseph makes Seventy-Five Thousand Dollars ($75,000) a month in rental income from Columbia University's Teacher's College/NYCDOE.

*JOSEPH SAYEGH, LUANA DARSON, and JOSEPH KINDA*

27.     Defendant JOSEPH SAYEGH is the Associate Director of Parish Finance of the Archdiocese of New York, an officer responsible for overseeing and supporting the financial and administrative operations of the parishes, as well as maintaining liaison between the parishes and the Archidiocesan office.

28.     Defendant LUANA DARSON is the Internal Auditor of the Archdiocese of New York and is responsible for evaluating and improving the operations and practices of the Archdiocese.

29.     Defendant JOSEPH KINDA is a Pastor at the Church of St. Joseph of the Holy Family.

## COLLECTIVE ACTION ALLEGATIONS

30.     Plaintiffs  bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

31.     Plaintiffs bring their (1) Title VII, Section 1981, NYSHRL, and NYCHRL and (2) NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of (1) all non-exempt Hispanic personnel employed by and discriminated against by Defendants ("Hispanic racial discrimination subclass") and (2) all non-exempt personnel ("NYLL subclass") employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

32.     All said persons, including Plaintiff, are referred to herein as the "Class."

33.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

34.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

35.    There are questions of law and fact common to the NYLL Subclass which predominate over any questions affecting only individual class members, including:

   a.  Whether Defendant employed Plaintiff and the Class within the meaning of the New York law;

   b.  Whether Plaintiffs and Class members are not paid at least the hourly minimum wage for each hour worked;

   c.  Whether Plaintiffs and Class members are entitled to and paid overtime at their promised hourly wage under the New York Labor Law;

   d.  Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiff and the Rule 23 Class spread-of-hours pay as required by the NYLL;

   e.  Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff and the Rule 23 Class's start of employment and/or timely thereafter;

   f.  Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiff and the Rule 23 class on each payday; and

   g.  At what common rate, or rates subject to common method of calculation was and

is Defendants required to pay the Class members for their work.

36.     There are questions of law and fact common to the Hispanic Discrimination Subclass which predominate over any questions affecting only individual class members, including whether Defendants, at the archdiocese level, unlawfully discriminated against Plaintiff employees as a result of their race.

### Typicality

37.     Plaintiff's  claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff  and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

### Adequacy

38.     Plaintiff  is  able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff  is  represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

### Superiority

39.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against

corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

40.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing

these risks.

# STATEMENT OF FACTS

**I.**     **FLSA/ NYLL Claims**

A.  **NYLL Paystub and Time-of-Hire Notice Violations**

1. **Plaintiff Nicolas Guadalupe Ramirez**

41.     Throughout his employment, Plaintiff NICOLAS GUADALUPE RAMIREZ was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Spanish, Plaintiff's native language.

42.     On pay days, Plaintiff NICOLAS GUADALUPE RAMIREZ was not given paystubs reflecting dates of work covered by the paycheck, name of the employee, name of the employer, employer's address and phone number, employee's rate or rates of pay and basis thereof, deductions and allowances taken, net wages earned, and numbers of hours worked.

2. **Plaintiff Estela Rocio Ramirez**

43.     Throughout her employment, Plaintiff ESTELA ROCIO RAMIREZ was not given a statement with her weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Spanish, Plaintiff's native language.

44.     On pay days, Plaintiff ESTELA ROCIO RAMIREZ was not given paystubs reflecting dates of work covered by the paycheck, name of the employee, name of the employer, employer's address and phone number, employee's rate or rates of pay and basis thereof,

deductions and allowances taken, net wages earned, and numbers of hours worked.

### 3. Plaintiff Rosalinda Rosales

45.     Throughout her employment, Plaintiff ESTELA ROCIO RAMIREZ was not given a statement with her weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Spanish, Plaintiff's native language.

46.     On pay days, Plaintiff ESTELA ROCIO RAMIREZ was not given paystubs reflecting dates of work covered by the paycheck, name of the employee, name of the employer, employer's address and phone number, employee's rate or rates of pay and basis thereof, deductions and allowances taken, net wages earned, and numbers of hours worked.

## B.  Wage-and-Hour Claims of Plaintiff Estela Rocio Ramirez

47.     Defendants committed the following alleged acts knowingly, intentionally and willfully against the Estela Rocio Ramirez, the FLSA Collective Plaintiff, and the Class.

48.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff Estela Rocio Ramirez her earned wages.

49.     The Church would be considered an employer under both the FLSA and NYLL.

50.     Plaintiff Estela Rocio Ramirez worked as a non-exempt custodian assistant and performed various duties traditionally delegated to paid workers for forty (40) hours per week.

## II.    Discrimination Allegations

## A.  Common discriminatory policy against Hispanic American workers at St. Joseph of the Holy Family

51.     By July 2020, Joseph Sayegh summarily terminated all but one of the Hispanic

11

workers, KEVIN NOYOLA, who was scheduled to leave for Seminary in August 2020.

52.   That Hispanic employee, KEVIN NOYOLA, was told he was fired by "mistake."

53.   The St. Joseph employees terminated included KEVIN NOYOLA, BRYANT DICKERSON, NICOLAS RAMIREZ, JR., MARIE KLIMAS, JOYCE AIKEN, RAUL GARCIA, FRANCISCO SALAZAR, MARISOL GARCIA, ALBERTO PEÑA, RONALD AIKEN, and Plaintiffs ESTELA ROCIO RAMIREZ, ROSALINDA ROSALES, and NICOLAS GUADELUPE RAMIREZ.

54.   MARIE KLIMAS, a White person, was offered a chance to return to her position; JOYCE AIKEN, a Black person, was offered a chance to return to her position; BRYANT DICKERSON, a Black person, was furloughed and offered a chance to return to her position.

55.   JOYCE AIKEN's replacement is Black African.

56.   However, none of the Hispanic workers, including KEVIN NOYOLA, NICOLAS RAMIREZ, JR., ALBERTO PEÑA, MARISOL GARCIA, ESTELA, ROSALINDA, and Plaintiff Ramirez, as well as RAÚL GARCIA who was fired in February 2020, have received offers to return.

57.   As only White American, Black Americans, and Black Africans were rehired, but no Hispanic Americans were rehired, it is clear that the Church discriminated against its Hispanic workers in its employment decisions. Even though the Plaintiffs, along with their Hispanic coworkers, were faithful parishioners and dedicated employees, the Church and the Archdiocese shows little concern for their livelihood, especially amidst a pandemic where job opportunities are scarce.

58.   Indeed, St. Joseph of the Holy Family specifically received money from the federal government in the form of SBA's Paycheck Protection Program a predominant purpose

12

of which was to pay St. Joseph employees.

59.   The Spanish-speaking parishioners of the Harlem community mobilized to "Save Our Staff at St. Joseph of the Holy Family" and circulated a demand to rescind these layoffs.

60.   However, these calls are ignored.

61.   When Hispanic parishioners complained to FATHER JOSEPH KINDA, FATHER JOSEPH KINDA told the parishioners: "with one call, the Hispanic people will be gone from the St. Joseph Church."

62.   This statement is made to the chagrin of multiple Hispanic parishioners who were astonished by what they heard.

63.   The below table (on page 14-15) summarizes by race and by position the employees that were fired, rehired/ retained at St. Joseph of the Holy Family.

**Table 1 Employees Fired, Rehired, and Retained by Race and Position**

| Name | Position | Race | Decision |
|---|---|---|---|
| JOSEPH KINDA | Father | Black African | Retained |
| FR. BERNARD | Father | White | Retained |
| KEVIN NOYOLA | Student Seminary | Hispanic | Fired 2020 July "by mistake", left by 2020 August for seminary |
| BRYANT DICKERSON | Music Director | Black American | Furloughed, offered to return early August 2020, did return |
| MARIE KLIMAS | Accounting | White | Fired 2020 July 31 and hired back 2020 August |
| JOYCE AIKEN | Office Manager | Black American | Fired 2020 July 31; Offered to Return 2020 August |
| NAME UNKNOWN (JOYCE AIKEN's Replacement) | Office Manager | Black African | Hired 2020 August? |
| NICOLAS RAMIREZ, JR. | Office Manager Assistant | Hispanic | Fired 2020 July 31 |
| GARCIA CONSTRUCTION **RAÚL GARCIA** | Construction Worker | Hispanic | Fired 2020 February 14 |
| GARCIA CONSTRUCTION **FRANCISCO SALAZAR** | Construction Worker | Hispanic | Fired 2020 February 14 |
| GARCIA CONSTRUCTION **MARISOL GARCIA** | Cleaning Lady | Hispanic | Fired 2020 February 14 |
| NICOLAS RAMIREZ | Head Custodian (Rectory, Church, Convent) | Hispanic | Fired 2020 July 31 |
| ESTELA RAMIREZ | Custodian Assistant (Rectory) | Hispanic | Fired 2020 July 31 |
| ROSALIND ROSALES | Cleaner (Rectory) | Hispanic | Fired 2020 July 31 |
| ALBERTO PEÑA | Cleaner (Church Basement) | Hispanic | Fired 2020 July 31 |
| RONALD (JOYCE AIKENS' SON) | Food Pantry | Black American | Fired 2020 July 31 |
| GLORIA FOREST | Cleaner  (Inside Church) | Black American | Retained Part-time since 6-7 years ago |
| CAROLINE NANEMA | Cleaner (Inside Church) | Black African | Retained 2020 March |
| NAME UNKNOWN | Cleaner(Outside Church) | Black | Hired 2020 August 2 |

**Table 2 Summary of Hiring Decision by Race**

|  | New Hire | Retain | Fired/ Rehired | Fired | Total by Race |
|---|---|---|---|---|---|
| **White** | 0 | 1 | 1 | 0 | 2 |
| **Black** | 2 | 3 | 2 (1 rejected offer) | 1 | 8 |
| **Hispanic** | 0 | 0 | 1 (left for Seminary) | 9 | 10 |
| **Total by Decision** | 2 | 4 | 4 | 10 | 18 |



### EMPLOYEE BY RACE

|  | Jan-20 | Feb-20 | Jul-20 | Aug-20 |
|---|---|---|---|---|
| White | 2 | 2 | 1 | 2 |
| Black | 6 | 6 | 3 | 6 |
| Non-Hispanic | 8 | 8 | 4 | 8 |
| Hispanic | 10 | 7 | 1 | 0 |

15

B. **Plaintiff Nicolas Guadalupe Ramirez**

1.**Hand-Scrubbing the Stairs for No Obvious Reason**

64.     Since 2016, Plaintiffs NICOLAS GUADALUPE RAMIREZ, ESTELA ROCIO

RAMIREZ, and ROSALINDA ROSALES were assigned to hand clean the 4 flights of stairs in

the rectory on their knees on a daily basis. This was after a visitor from England remarked to

Father DAVID E. NOLAN that the stairs should be hand cleaned rather than vacuumed.

65.     The plaintiffs were the only three Hispanic individuals among the cleaning staff

assigned to the rectory, and the only ones asked to perform the strenuous and degrading labor of

hand-scrubbing the stairs on their knees.

66.     In November 2017, Plaintiff NICOLAS GUADALUPE RAMIREZ'S knee was

fractured.

67.     Surgery was performed as a result of the knee fracture.

68.     Seizing the comment made by an outside visitor that the rectory should be hand-

cleaned, St. Joseph Church targeted its own Hispanic cleaning staff and suffered them to

perform a task at the expense of their physical wellbeing.

2.**Joseph Sayegh Threatening and Harassing Plaintiff to Move Out on**

  **False Grounds**

69.     In February 2020, at the onset of the COVID-19 pandemic in New York,

Defendant JOSEPH SAYEGH, Associate Director of Parish Finance, a White person, visited

the church-property where Plaintiff NICOLAS GUADALUPE RAMIREZ and his family lived.

70.     Defendant SAYEGH attempted to evict Plaintiff NICOLAS GUADALUPE

RAMIREZ and his family for the alleged reasons that the ecclesiastical law of the Archdiocese

no longer allows non-Priests to live on church-owned property, and that the Archdiocese was

unaware that the family lived there.

71.     However, the reasons given by Defendant SAYEGH cannot stand because in Plaintiff NICOLAS GUADALUPE RAMIREZ's conversations with the fathers of St. Joseph since then, no one could answer him regarding such a change in ecclesiastical law. Moreover, In June 2020, Father PHILIP J. KELLY told Plaintiff NICOLAS GUADALUPE RAMIREZ that his residence at the church-owned property was legal, and that the Archdiocese was aware he lived at the "Sexton House", which was built specifically for the church's custodians. He further pointed out that the Ramirez family's name was on the record of Jerry Eagon, the insurance company of the Archdiocese.

72.     On May 14 2020, Defendant SAYEGH told Plaintiff NICOLAS GUADALUPE RAMIREZ that Defendant JOSEPH KINDA was offering Ten Thousand Dollars ($10,000) for the family to leave the property by the end of that month.

73.     Defendant SAYEGH told Plaintiff NICOLAS GUADALUPE RAMIREZ that the Church did not have any money.

74.     On or around May 22, 2020, Defendant SAYEGH arrived at the church-owned property again without notice and without permission. He said either Plaintiff NICOLAS GUADALUPE RAMIREZ moves out and gets $10,000, or he would change the locks to Plaintiff's family "out on the streets".

75.     When Plaintiff NICOLAS GUADALUPE RAMIREZ asked him to put this offer in writing, Defendant SAYEGH promised to do so but never did.

76.     Plaintiff NICOLAS GUADALUPE RAMIREZ and his family were living on the church property designated for staff.

77.     Both Plaintiff NICOLAS GUADALUPE RAMIREZ and his wife, Plaintiff

17

ESTELA ROCIO RAMIREZ, were exemplary employees.

78.     Plaintiff NICOLAS GUADALUPE RAMIREZ has acted upon his faith and volunteered his first born, Nicolas P. Ramirez, to serve as an altar boy from ages 7 to 18 years of age, enrolled his son through a Catholic education (Corpus Christi Middle School in Harlem, Morningside Heights, La Salle Academy High School in Lower East Side), and even delayed his college education to help out the church.

79.     Plaintiff's younger son, Alexander Ramirez, also went through a Catholic education, from Corpus Christi Middle School and Ascension Middle School.

80.     Because of prejudices against his Hispanic ethnicity, Plaintiff NICOLAS GUADALUPE RAMIREZ suffered a stream of threats of eviction and harassment from Defendant SAYEGH cloaked in the veil of false claims such as changes in ecclesiastical law, the church's unawareness, and its lack of funding.

81.     In the midst of a pandemic where death rates were sky-rocketing, Defendant SAYEGH terrorized Plaintiff's family and exposed them to the risks of personal distress and housing insecurity.

3. **Inaction on the Part of the Archdiocese of New York in Response to Sayegh's Terrorizing Behavior**

82.     After Plaintiff NICOLAS GUADALUPE RAMIREZ's conversation with Defendant SAYEGH on or around May 22, 2020, he complained about Defendant SAYEGH's conduct to Reverend GREGORY C. CHISHOLM of the St. Charles Borromeo, Resurrection and All Saints Parish, another church near St. Joseph.

83.     Plaintiff NICOLAS GUADALUPE RAMIREZ never heard back from Father CHISHOLM.

84.     Despite Plaintiff NICOLAS GUADALUPE RAMIREZ's exceptional

performance and the fact that Defendant SAYEGH was making false claims about the

Archdiocese's knowledge of the family's residence, the Archdiocese allowed Defendant

SAYEGH to continue his campaign, wherein he abused powers which he did not have, and

dressed down Plaintiff NICOLAS GUADALUPE RAMIREZ and his family in the presence of

other church employees.

C.  **Plaintiff Estela Rocio Ramirez**

1. **Hand-Scrubbing the Stairs Daily for No Reason**

85.     Since 2016, Plaintiffs ROSALINDA ROSALES, NICOLAS GUADALUPE

RAMIREZ, and ESTELA ROCIO RAMIREZ were assigned to hand clean the 4 flights of stairs

in the rectory on their knees on a daily basis. This was after a visitor from England remarked to

Father DAVID E. NOLAN that the stairs should be hand cleaned rather than vacuumed.

86.     The plaintiffs were the only three Hispanic individuals among the cleaning staff

assigned to the rectory, and the only ones asked to perform the strenuous labor of hand-

scrubbing the stairs.

2. **Joseph Sayegh Threatening and Harassing Plaintiff to Move Out on**

**False Grounds**

87.     In February 2020, at the onset of the COVID-19 pandemic in New York,

Defendant SAYEGH, white Associate Director of Parish Finance, visited the church-property

where Plaintiff ESTELA ROCIO RAMIREZ and her family lived. He attempted to evict

88.     He attempted to evict Plaintiff ESTELA ROCIO RAMIREZ and her family for

the alleged reasons that the ecclesiastical law of the Archdiocese no longer allows non-Priests to

live on church-owned property, and that the Archdiocese was unaware that the family lived

there.

89.     On or around May 22, 2020, Defendant SAYEGH arrived at the church-owned property without notice and without permission. He said either Plaintiff ESTELA ROCIO RAMIREZ's family move out and get $10,000, or he would change the locks to put them "out on the streets".

90.     Plaintiff ESTELA ROCIO RAMIREZ and her family were living on church property designated for staff residence, where they resided for over 20 years without a single accident. Defendant SAYEGH systematically harassed Plaintiff ESTELA ROCIO RAMIREZ and her family, exposing them to the risk of housing insecurity and distress in the middle of a pandemic.

### D.  **Plaintiff Rosalinda Rosales**

#### 1. **Hand-Scrubbing the Stairs Daily for No Reason**

91.     Since 2016, Plaintiffs ESTELA ROCIO RAMIREZ, NICOLAS GUADALUPE RAMIREZ, and ROSALINDA ROSALES were assigned to hand clean the 4 flights of stairs in the rectory on their knees on a daily basis. This was after a visitor from England remarked to Father DAVID E. NOLAN that the stairs should be hand cleaned rather than vacuumed.

92.     Plaintiffs ESTELA ROCIO RAMIREZ, NICOLAS GUADALUPE RAMIREZ, and ROSALINDA ROSALES were the only three Hispanic individuals among the cleaning staff assigned to the rectory, and the only ones asked to perform the strenuous labor of hand-scrubbing the stairs.

93.     Seizing the comment made by an outside visitor, St. Joseph Church targeted its own Hispanic cleaning staff and suffered them to perform a task at the expense of their physical wellbeing.

### III.   Failure to Pay Promised Severance

#### A.   Common Policy Regarding Severance for Employees of Churches in the Archdiocese

94.   Churches in the Archdiocese of New York has a longstanding employment policy of offering one-week's severance per year of service to all employees who are terminated.

#### B.   Plaintiff Nicolas Guadalupe Ramirez

95.   After 27 years with the Archdiocese of New York, first at St. Joseph of the Holy Family-annexed School and thereafter at the church, rectory, and convent as a servant at the Church and as a parishioner with good moral character and diligence, Plaintiff NICOLAS GUADALUPE RAMIREZ was terminated without cause.

96.   He is therefore entitled to one week's severance pay.

#### C.   Plaintiff Estela Rocio Ramirez

97.   Similarly, Plaintiff ESTELA ROCIO RAMIREZ was terminated without cause after 8 and 3 years of satisfactory performance.

98.   She is therefore entitled to one week's severance pay.

#### D.   Plaintiff Rosalinda Rosales

99.   Similarly, Plaintiff ROSALINDA ROSALES was terminated without cause after 8 and 3 years of satisfactory performance.

100.   She is therefore entitled to one week's severance pay.

### CLASS ACTION ALLEGATIONS

101.   Plaintiffs brings their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants at Long Island Business Institute on or after the date that is six years before the filing of the Complaint

in this case as defined herein (the "Class Period").

102.   All said persons, including Plaintiffs, are referred to herein as the "Class."

103.   The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

*Numerosity*

104.   The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

105.   There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

       a.   Whether Defendant employed Plaintiff and the Class within the meaning of the New York law;

       b.   Whether Plaintiff and Class members are entitled to overtime under the New York Labor Law;

       c.   Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiff and the Rule 23 Class spread-of-hours pay as required by the

NYLL;

d.   Whether Defendants maintained  policy, pattern and/or practice of failing to provide requisite statutory meal periods;

e.   Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff and the Rule 23 Class's start of employment and/or or timely thereafter;

f.   At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work;

*Typicality*

106.   Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime compensation. Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

107.   Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage and hour employment litigation cases.

*Superiority*

108.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  Further, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

109.   Upon information and belief, defendants and other employers throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because

doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violations of the Fair Labor Standards Act—Unpaid Wages
### Brought on behalf of Plaintiff ESTELA ROCIO RAMIREZ  and
### the FLSA Collective]

110.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

111.   At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff ESTELA ROCIO RAMIREZ in full, and the similarly situated collective action members, for some or all of the hours they worked.

112.   The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

113.   Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

### COUNT II.
### [Violations of the New York Labor Law—Unpaid Wages
### Brought on behalf of the Plaintiff ESTELA ROCIO RAMIREZ  and Rule 23 Class]

114.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

115.   Section 191.1, Subsection (d) of the NYLL provides that "a clerical and other

worker shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer."

116.   Defendants unlawfully withheld wages from Plaintiff ESTELA ROCIO RAMIREZ's pay.

117.   Section 198, Subsection 1-a of the NYLL provides that "[i]n any action instituted in the courts upon a wage claim by an employee… in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law in rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."

118.   Despite Defendants' knowledge of the provisions of the NYLL, Defendants knowingly, willfully, and maliciously disregarded the provisions of the NYLL by failing to pay Plaintiff ESTELA ROCIO RAMIREZ her wages timely.

### COUNT III.
**[Violation of New York Labor Law—Time of Hire Wage Notice Requirement
Brought on Behalf of Plaintiffs and the Rule 23 Class
against all Defendants]**

119.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

120.   The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage,

including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

121.   Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on her or her first day of employment.

122.   Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to each Plaintiff even after the fact.

123.   Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT IV.
### [Violation of New York Labor Law—New York Pay Stub Requirement
### Brought on Behalf of Plaintiffs and the Rule 23 Class
### against all Defendants]

124.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

125.   The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

126.   Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or

after each Plaintiff's payday.

127.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

**COUNT V.**
**[Race Discrimination in Violation of the Civil Rights Act of 1866, 42 USC §1981**
**Brought on behalf of Plaintiffs**
**against all Defendants]**

128.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

129.    The aforesaid discriminatory acts and omissions of Defendants and their agents interfered with Plaintiffs and their right to enforce contracts.

130.    That the purpose of Defendants and their agents in so acting was to prevent Plaintiffs through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and State of New York.

131.    Pursuant to their conduct, Defendants and their agents acted to deprive the Plaintiffs of their civil rights, by repeated acts of bad faith in violation of 42 U.S.C. §1981.

132.    As a result, Plaintiffs suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

**COUNT VI.**
**[Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42**
**U.S.C. §2000(e) *et. Seq***
**Brought on behalf of Plaintiffs against Defendants]**

133.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

134. Plaintiffs allege that Defendants Archdiocese of New York; St. Joseph Of The Holy Family; Joseph Sayegh, Luana Darson, and Joseph Kinda discriminated against Plaintiffs with respect to the terms and conditions of employment because of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended by the Civil Rights Act of 1991.

135. Defendants' conduct has been intentional, deliberate, willful and conducted in callous disregard of the rights of Plaintiffs under the law.

136. By virtue of Defendant's conducted alleged herein, Plaintiffs have been financially and psychologically injured.

## COUNT VII.
### [Hostile Work Environment in Violation of the Civil Rights Act of 1866, 42 USC §1981 Brought on behalf of Plaintiffs against Defendants]

137. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

138. Plaintiffs allege that Defendants engaged in various and severe and hostile actions against them acting individually as a result of their opposition to race discrimination.

139. That the purpose of Defendants and their actions in so seeking was to prevent Plaintiffs through economic and psychological intimidation, from seeking equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and State of New York.

140. As a result of the aforesaid acts, depriving Plaintiffs of their civil rights, they suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

### COUNT VIII.

29

**[Race Discrimination in Violation of New York State Executive Law §296
Brought on behalf of Plaintiffs against all Defendants]**

141.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

142.   New York State Executive Law §296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race. The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

## COUNT IX.
**[Violation of New York State Human Rights Law
Aiding and Abetting
Brought on behalf of Plaintiffs against Individual Defendants]**

143.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

144.   Defendants SAYEGH, DARSON, and KINDA were all managers and/or supervisors of the Plaintiffs during all relevant times mentioned herein.

145.   Defendants SAYEGH, DARSON, and KINDA aided and abetted Corporate Defendants in its discriminatory, hostile and retaliatory conduct against Plaintiffs.

146.   The acts and/or omissions of Defendants were intentional, willful, reckless and discriminatory in nature, and directly motivated by Plaintiffs' race and/or in retaliation for Plaintiffs' complaints of discrimination.

147.   By virtue of Defendants' conduct as alleged herein, Plaintiffs have been injured.

## COUNT X.
**[Race Discrimination in Violation of New York City Human Rights Law § 8-107
Brought on behalf of Plaintiffs against all Defendants]**

148.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

149.    New York City Human Rights Law §8-107 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race. The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and the FLSA Collective Plaintiffs and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)    Severance pay owed Plaintiffs as a result of Defendants' breach of contract;

c)    Certification of this case as a collective action pursuant to FLSA;

d)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and her counsel to represent the Collective Action Members;

e)       A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

f)       An injunction against Corporate Defendants that do business as Long Island Business Institute, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

g)       An award of unpaid overtime wages due under FLSA and New York Labor Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

h)       An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages, overtime compensation pursuant to 29 U.S.C. §216;

i)       Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide an Initial Time of Hire Notice detailing rates of pay and pay day;

j)       Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

k)       An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

l)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

m)      An award of prejudgment and post-judgment fees;

n)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

o)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

p)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

**Furthermore**, Plaintiffs respectfully request that this Court enter a judgment for their discrimination claims providing the following relief:

1.      Declaring the acts and practices complained of herein in violation of the Civil Rights Act of 1866, the Title VII of the Civil Rights Act of 1964, the New York State Executive Law §296, the New York City Human Rights Law §8-107, and the Age Discrimination in Employment of 1967;

2.      Enjoining defendants, their officers, employees, successors, franchises, agents and other persons in active concerts or participation with any of them, from engaging in any act or practices which, on the basis of race, denies or abridges any rights secured by the Civil Rights Act of 1866, the Title VII of the Civil Rights Act of 1964, the New York State Executive Law §296, and the New York City Human Rights Law §8-107 to prevent defendants from so doing in the future;

3.      Enjoining defendants, their officers, employees, successors, franchises, agents and other persons in active concerts or participation with any of them, from engaging in any act or practices which, on the basis of age, denies or abridges any rights secured by the Age Discrimination in Employment of 1967 to prevent defendants from so doing in the future;

4.      Directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

5.      Directing defendants to place plaintiffs in the position they would be in but for defendants' discriminatory treatment towards them, and to make whole for all earnings they would have received but for defendants' discriminatory treatment;

6.      An award of compensatory and punitive damages, not less than $300,000 against the Archdiocese of New York, St. Joseph of the Holy Family, Joseph Sayegh, Luana Darson, and Joseph Kinda, from engaging in unlawful discriminatory practices, policies and patterns set forth herein under Title VII;

7.      An award of compensatory damages for mental anguish, emotional distress, loss of employment opportunities, and other monetary damages in an amount, not less than $500,000 the Archdiocese of New York, St. Joseph of the Holy Family, Joseph Sayegh, Luana Darson, and Joseph Kinda from engaging in unlawful discriminatory practices, policies and patterns set forth herein under the Section 1981 of the Civil Rights Act of 1866;

8.      An award of compensatory damages, in an amount, not less than $500,000 the Archdiocese of New York, St. Joseph of the Holy Family, Joseph Sayegh, Luana Darson, and Joseph Kinda from engaging in unlawful discriminatory practices, policies and patterns set forth herein under the New York State Executive Law §296;

9.      An award of compensatory and punitive damages, in an amount, not less than

$500,000 against the Archdiocese of New York, St. Joseph of the Holy Family, Joseph Sayegh,

Luana Darson, and Joseph Kinda from engaging in unlawful discriminatory practices, policies

and patterns set forth herein under the New York City Human Rights Law §8-107;

10.     An injunction against Joseph Sayegh, Luana Darson, and Joseph Kinda for aiding

and abetting Long Island Business Institute's discriminatory practices against Plaintiffs;

11.     For prejudgment interest;

12.     For post-judgement interest;

13.     For reasonable attorney's fees, together with the costs and expenses incurred in

this action per Title VII and NYCHRL; and

14.     For such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiffs

demand a trial by jury on all questions of facts.

Dated: Flushing, New York
January 11, 2021

TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA*
*Collective and potential Rule 23 Class*

/s/ John Troy
John Troy (JT0481)
Aaron Schweitzer (AS 6369)