# TROY LAW, PLLC

ATTORNEYS / COUNSELORS AT LAW
Tel: 718 762 1324   johntroy@troypllc.com   Fax: 718 762 1342
41-25 Kissena Blvd., Suite 103, Flushing, New York 11355

September 2, 2022

*Via ECF*
Honorable Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   **Joint Letter Motion Requesting Court Approval of Settlement Agreement**
*RAMIREZ et al. v ARCHDIOCESE OF NEW YORK et al., 1:21-cv-00231_GHW-OTW*

Dear Judge Woods:

In accordance with the Court's Order dated August 7, 2022, the Parties write jointly to move "setting forth their views as to why their settlement is fair and should be approved." *See* Docket Entry No. 86 at *2. In that same order, the Court directed the parties to "address the considerations detailed in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), and [to] include a copy of the settlement agreement itself, attached as an exhibit." *See i.d.*

   **I.   Background**

Plaintiffs NICOLAS GUADALUPE RAMIREZ (hereinafter "NICOLAS"), ESTELA ROCIO RAMIREZ (hereinafter "ESTELA"), ROSALINDA ROSALES ("ROSALINDA), NICHOLAS P. RAMIREZ (hereinafter "NICHOLAS"), and ALBERTO PENA (hereinafter "ALBERTO") allege that they were employed by Defendants ARCHDIOCESE OF NEW YORK, ST. JOSEPH OF THE HOLY FAMILY, JOSEPH SAYEGH, LUANA DARSON, and JOSEPH KINDA, (collectively, "Defendants"). This lawsuit was originally filed on January 11, 2021, alleging (1) violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), addressed in this Joint Letter Motion; (2) non-related employment discrimination claims on the basis of race and national origin under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), New York State Human Rights Law, NY Exec. § 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, NYC Admin. § 8-101 *et seq.* (NYCHRL); and (3) severance damages due to breach of implied contract.

The instant application seeks Court approval of the settlement agreement resolving all alleged claims, including Plaintiffs' FLSA and NYLLclaims. Plaintiffs alleged that pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage, (2) unpaid

Hon. Gregory H. Woods
Page 2

overtime wages, (3) liquidated damages, (4) pre-judgment and post-judgment interest; and/or (5) attorneys' fees and costs. Plaintiffs further alleged pursuant to NYLL § 650 *et seq.* and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation, (2) unpaid overtime compensation, (3) unpaid "spread of hours" compensation, (4) liquidated damages equal to the sum of unpaid minimum wage, unpaid overtime, unpaid "spread of hours," in the amount of twenty five percent under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (5) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (6) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (7) 9% simple prejudgment interest provided by NYLL, (8) post-judgment interest, and (9) attorney's fees and costs. Defendants deny all of Plaintiffs' claims in their entirety.

## II. The FLSA Settlement is Fair and Reasonable

On July 28, 2022, the parties participated in a private mediation session before Judge Henry Pitman (Ret.) and on August 1, 2022, agreed to a settlement in principle in the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00). Of that amount, the parties allocated (1) One Hundred Thousand Dollars ($100,000.00) to wage-and-hour claims under the FLSA and NYLL and (2) Six Hundred Fifty Thousand Dollars ($650,000.00) to all other non-FLSA or NYLL claims alleged in Plaintiffs' Third Amended Complaint.

This settlement was the result of a contested litigation and arm's-length bargaining between experienced counsel, and guidance of this Court. The parties appeared for a settlement conference with the Court on December 13, 2021 but were unable to settle the case. Instead, they continued with depositions and discovery and after further litigation and at the mediation referenced above ultimately reached an agreement in principle.

In this context, we note that the litigation risks faced by the parties are substantial. Plaintiffs claimed that they were not paid at least the minimum hourly wage rate for all hours worked, and one- and one-half times the regular hourly rate for all hours worked in excess of forty hours (40) in a given workweek. Had the parties not reached this resolution, then they would have proceeded with additional depositions, most likely motion(s) for summary judgment and a full trial on the merits. Afterward, the determination of the case could be the subject of a further appeal. The parties anticipate that further litigation would lead to increased litigation costs, use of judicial resources, and extensive delay of resolution. In light of these factors, including the serious risks and uncertainties posed by further litigation, this settlement agreement is a reasonable compromise over the contested issues and the Court's approval is appropriate. The parties believe for all of the reasons stated in this letter, the *Cheeks v. Freeport Pancake House, Inc.,* 796 F. 3d 199, 206 (2d Cir. 2015) factors have been satisfied.

The Settlement Agreement is attached hereto as Exhibit 1.

### A. Plaintiffs' Assessment

Plaintiffs' counsel evaluated Plaintiffs' potential damages by discussing with Plaintiffs in great detail the length of their employment, the nature of their work, the hours they worked, and the pay they received as compensation.

The calculations forming the basis of the wage-and-hour damages were made based on this review and the potential damages for the Plaintiffs are as follows:

### 1. Plaintiff NICOLAS GUADALUPE RAMIREZ

In the Third Amended Complaint, NICOLAS GUADALUPE RAMIREZ alleged that during the relevant time period, between January 11, 2015 to July 31, 2020, he would regularly work more than 40 hours for the "good of the church." This included an average of 21 unpaid hours per week and an additional unpaid overtime at the .5 rate for 21 hours per week. *See* Third Am. Cmplt. ¶ 76 (3-4 hours/ Saturday to cut grass, trim bushes); ¶ 77 (80-90 hours/ month to clear the snow); ¶ 81 (Oct. and Nov. 3-4 hours extra/ 1.5 days to clear the fall leaves); ¶ 83 (1-2 hours to shovel snow at Saint Theresa); ¶¶ 85-88 (1-2 hours/ flooding, power, heating, air conditioning); ¶¶ 85-88 (3-4 hours, 6-8 times per month to do handyman work); ¶ 92 (Oct and Nov. 3 hours/ OT to cook for visiting priests). During this same time period, Plaintiff was paid One Thousand Eight Hundred Sixty-One Dollars ($1,861.00) per week.

Plaintiff NICOLAS's unpaid wage and overtime compensation shortfall without liquidated damages under the FLSA was One Hundred Ninety-One Thousand Three Hundred Seventy-Three Dollars And Forty-Three Cents ($191,373.43) and his minimum wage and overtime compensation shortfall under the NYLL was Four Hundred Sixteen Thousand Two Hundred Sixteen Dollars and Sixty Eight Cents ($416,216.68). Additionally, Plaintiff claimed Five Thousand Dollars ($5,000.00) for NYLL Initial Time-of-Hire Notice Violations, and Sixty One Thousand Eight Hundred Twenty One Dollars and Eight Cents ($61,821.08) in New York pre-judgment interest. The sum of one NYLL compensatory damages, plus NYLL paystub and time-of-hire notice violation, with prejudgment interest, is Four Hundred Eighty Three Thousand Thirty Seven Dollars and Seventy Six Cents ($483,037.76).

### 2. Plaintiff ESTELA ROCIO RAMIREZ

In the Third Amended Complaint, ESTELA ROCIO RAMIREZ alleged that during the relevant time period, between January 11, 2015 to July 31, 2020, she would regularly work for 52.25 hours per week, none of which was paid. Specifically, in addition to her regular work hours of 40 hours a week, Estela had to work additional hours on Mondays (0.5 hours), Tuesdays (1.5 hours), Wednesdays (0.5 hours), Thursdays (1.5 hours), Fridays (3.75 hours) and Saturdays (4.5) hours. *See id.* ¶¶ 98-103.

Plaintiff ESTELA's unpaid wage and overtime compensation shortfall without liquidated damages under the FLSA was Fifty-Six Thousand Six Hundred Forty-Nine Dollars And Sixty-Nine Cents ($56,649.69) and her minimum wage and overtime compensation shortfall under the NYLL was One Hundred Ninety-Nine Thousand Four Hundred One Dollars And Seventy Cents ($199,401.70). Additionally, Plaintiff claimed Five Thousand Dollars ($5,000.00) for NYLL

paystub violations and Five Thousand Dollars ($5,000.00) for NYLL Initial Time-of-Hire Notice Violations, and Sixty-Four Thousand Four Hundred Fourteen Dollars And Fifty-Three Cents ($64,414.53) in New York pre-judgment interest. The sum of one NYLL compensatory damages, plus NYLL paystub and time-of-hire notice violation, with prejudgment interest, is Two Thousand Seventy Three Thousand Eight Hundred Sixteen Dollars and Twenty Two Cents ($273,816.22).

### 3. Plaintiff ROSALINDA ROSALES

In the Third Amended Complaint, ROSALINDA ROSALES alleged that while a part time worker, she would be assigned to work in excess of 16 hours a workweek. More specifically, Rosalinda would not be paid for around .7 hours per week. *See id.* ¶¶ 106-110.

Plaintiff ROSALINDA claimed that she worked approximately seventeen (16.90) hours on average each week from July 01, 2016 to July 31, 2020; and she was paid Two Hundred Forty Dollars ($240.00) per week from July 01, 2016 to July 31, 2020.

Plaintiff ROSALINDA's unpaid wages shortfall without liquidated damages under the FLSA was One Thousand Three Hundred Eighty Four Dollars and Twelve Cents ($1,384.12) and her unpaid wages shortfall under the NYLL was Two Thousand Two Hundred Eleven Dollars And Ninety-Two Cents ($2,211.92). Additionally, Plaintiff claimed Five Thousand Dollars ($5,000.00) for NYLL Initial Time-of-Hire Notice Violations, and Five Hundred Sixty-Eight Dollars And Twenty Cents ($568.20) in New York pre-judgment interest. The sum of one NYLL compensatory damages, plus NYLL paystub and time-of-hire notice violation, with prejudgment interest, is Seven Thousand Seven Hundred Eighty Dollars and Twelve Cents ($7,780.12).

### 4. Plaintiff ALBERTO PENA

Opt-in Plaintiff Alberto Pena does not allege any minimum wage or overtime compensation claims. He worked approximately eight (8.25) hours on average each week from January 19, 2018 to July 31, 2020; and he was paid Three Hundred Dollars ($300.00) per week from January 19, 2018 to July 31, 2020. He claimed Five Thousand Dollars ($5,000.00) for NYLL Initial Time-of-Hire Notice Violations.

### 5. Plaintiff NICHOLAS RAMIREZ

Opt-in Plaintiff Nicholas Ramirez alleges in the Third Amended Complaint that while the part-time office assistant at St. Joseph of the Holy Family, from August 25, 2018 to July 31, 2020, he was paid One Hundred Twenty Dollars ($120.00) per week for eight hours of work. However, he was required to work an additional half an hour, unpaid, an average of two Saturdays each month to help set up the altar.

Plaintiff NICHOLAS P. RAMIREZ's unpaid wages shortfall without liquidated damages under the FLSA and NYLL was Three Hundred Seventy-Eight Dollars And Twenty-One Cents

($378.21). Additionally, Plaintiff claimed Five Thousand Dollars ($5,000.00) for NYLL Initial Time-of-Hire Notice Violations, and Sixty Dollars And Fifty-Eight Cents ($60.58) in New York pre-judgment interest. The sum of one NYLL compensatory and liquidated damages, plus NYLL paystub and time-of-hire notice violation, with prejudgment interest, is Five Thousand Thirty Eight Dollars and Seventy Nine Cents ($5,438.79).

Plaintiffs' Damages Calculation is attached hereto as Exhibit 02.

After extensive negotiations, and given the inherent risks of litigation and Defendant's capacity to pay the judgment, Plaintiff and Defendants agreed to settle for the proposed settlement amount of One Hundred Thousand Dollars ($100,000.00) for the wage-and-hour portion of the settlement.

Based on the estimated total damages, the amount of One Hundred Thousand Dollars ($100,000.00) for the wage-and-hour claims is fair and the proposed settlement agreement should be approved under the five factors identified by the Honorable Jesse M. Furman, United States District Judge, in Wolinsky: (1) the plaintiffs range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion (internal quotations marks omitted). The settlement here satisfies these criteria.

First, the wage-and-hour settlement to Plaintiffs represents around 40% of their FLSA damages. As discussed in more detail below, given the risks these issues present, the settlement amount is reasonable. Defendants dispute Plaintiff ESTELA's claim that she was not paid any wages at all relevant times and claim instead that her wages was included as a line item on Plaintiff NICOLAS's paystub. Defendants further dispute the inclusion of the fair rental value of the Carriage House provided to NICOLAS as part of his compensation, as well as the hours worked by Plaintiffs.

Second, the settlement will entirely avoid the expense and aggravation of litigation. Defendants dispute the hours Plaintiffs claimed they worked and their failure to pay ESTELA any compensation. Thus, trial preparation would likely require Defendants' depositions of Plaintiffs to explore these issues. The settlement avoids the necessity of conducting these depositions.

Third, the settlement will enable Plaintiffs to avoid the risk of litigation. To prevail at trial, Plaintiffs will bear the burden of proving the number of hours they worked and respond to Defendants' contentions (as set forth above). If the fact finder does not credit their testimony about their hours worked, or for Plaintiff ESTELA that she was not paid any wages, or that the fair rental

value of the home was part of Plaintiff NICOLAS' salary, Plaintiffs may not be able to recover on their unpaid wages and overtime compensation claims.

Fourth, the settlement is the product of arm's-length bargaining between experienced counsels. Both Troy Law and Jackson Lewis specialize in employment litigation, and the settlement was reached following a mediation before Judge Pitman.

Fifth, there are no factors that suggest the existence of fraud or collusion.

### B. Defendants' Assessment

In terms of Plaintiffs' FLSA Claims, Defendants have asserted several defenses. Defendants deny all claims that Plaintiffs worked hours beyond their scheduled shifts for which they were not paid and further deny that Plaintiffs were paid below the applicable minimum wage rate. To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he or she performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.,* 643 F.3d 352, 361 (2d Cir. 2011). Even if Plaintiffs, who lived on the premises, worked additional hours beyond their schedules, Defendants did not request that they work those hours and could not have been aware that Plaintiffs were performing job duties outside of their scheduled times. Therefore, Defendants did not suffer or permit the work and are not liable for any time worked that they did not have knowledge of. Accordingly, Defendants deny that Plaintiffs are owed any unpaid wages.

Defendants also believe that even if certain of their claims are credited Plaintiffs have overstated their damages. Plaintiffs' damages calculations seek recovery for alleged unpaid wages and liquidated damages under both the FLSA and the NYLL, but Plaintiffs cannot recover duplicative damages under both laws. Courts in the Second Circuit have held that Plaintiffs are not entitled to both FSLA and NYLL liquidated damages because they serve the same practical purposes in compensating the Plaintiff and deterring wage violations. In any event, Plaintiffs are not entitled to any liquidated damages, as Defendants acted in good faith to comply with the FLSA and the NYLL.

### III. The Settlement Agreement Terms are Reasonable

The parties recognize that the release language in the Settlement Agreement (Section 3) goes beyond the release of wage and hour claims that is typically permitted when the Court conducts a Cheeks review. However, the focal point of the litigation and the majority of the damages alleged in the case have been attributed to Plaintiffs' allegations of race and national origin discrimination and harassment, as well as multiple different theories of retaliation. Plaintiffs amended their initial Complaint three times throughout the litigation in order to amplify and supplement their claims of discrimination, harassment and retaliation, all of which Defendants

Hon. Gregory H. Woods
Page 7

deny. Plaintiffs also allege common law claims of breach of contract. Accordingly, given the vast number of claims and theories alleged in the litigation, and as the purpose of this settlement is to provide a complete resolution of the case, the parties respectfully submit that the language of the release provision is necessary and appropriate.

The Settlement Agreement also contains a very limited confidentiality provision (Section 6) which has no applicability to Plaintiffs' FLSA claims. The provision merely prohibits the Plaintiffs from disseminating information about the amounts received in settlement of their non-FLSA claims. There are no prohibitions on the Plaintiffs' right to discuss the litigation and/or settlement of their FLSA claims. Moreover, the parties recognize that notwithstanding this provision the entire Settlement Agreement is being publicly filed with the Court and are not making any application for it to be filed under seal.

### IV. The Attorneys' Fees Are Fair and Reasonable

Defendants will provide Plaintiff with a settlement in the amount of One Hundred Thousand Dollars ($100,000.00). Of the Settlement Amount, One Third (1/3), or Thirty-Three Thousand Three Hundred Thirty-Three Dollars And Thirty-Three Cents ($33,333.33) is to be paid to Plaintiffs' counsel. Two Thirds (2/3), or Sixty-Six Thousand Six Hundred Sixty-Six Dollars And Sixty-Seven Cents($66,666.67) is due to Plaintiffs.

Plaintiffs' allocation percentage is determined as follows: By first finding the sum of compensatory damages (NYLL) in the damages computed for each Plaintiff; plus Time-of-Hire and Paystub violations and then finding the total for Plaintiffs; and finding the weight of each Plaintiff's compensatory and liquidated damages of this total.

The retainer agreements agreed to and signed by Plaintiffs provided that Plaintiffs' counsel could recover One Third (1/3) of net recovery of any settlement in addition to costs and expenses. Plaintiffs' Counsel seek One Third (1/3) of the recovery.

Contingency fees of approximately one-third in FLSA cases are routinely approved in this Circuit and District. *Yunjian Lin v. Grand Sichuan 74 St. Inc.*, No. 15-CV-2950 (RA), 2018 U.S. Dist. LEXIS 110266, 2018 WL 3222519, *5 (S.D.N.Y. July 2, 2018); see also *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13-CV-3234 (LB), 2013 U.S. Dist. LEXIS 134207, 2013 WL 5308277 at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, and noting that such a fee arrangement "is routinely approved by courts in this Circuit"). The proposed fee amount is approximately one-third of the net settlement amount, "which is an amount routinely approved under the percentage method" in this District.

Hon. Gregory H. Woods
Page 8

    For the reasons provided above, the parties respectfully seek this Court's approval of the settlement.

Respectfully Submitted,
**TROY LAW PLLC**
*Attorneys for Plaintiffs*

/s/ John Troy
John Troy, Esq.
Aaron Schweitzer
Tiffany Troy
41-25 Kissena Blvd., Suite 103
Flushing, NY 11355
Tel.: 718 762 1324

cc: All Counsel (VIA ECF)

4884-0214-4817, v. 1